Good morning, your honors. Andrea St. Julian on behalf of the plaintiff appellant Michael Jayne, and I'd like to reserve two minutes for O'Donnell. I'm going to address most of my argument today to the search issues raised in the briefing. Central to the evaluation of the illegal search that took place in this case is the Stored Communications Act. Despite the centrality of the act, the lower court essentially ignored it. Well, counsel, as a factual matter, how does it play in this case? Because as I understand it, and I may be incorrect, but as I understand it, the request for the location information on the cell phone was withdrawn within a matter of a few hours, and no information from that source was used to locate your client. Is that factually correct? And if not, where in the record will I find it? And if it is factually correct, why isn't all of this a purely academic exercise? It is correct that that is what the defendants have alleged. Mr. ---- They haven't alleged it. They have introduced declarations saying that. Yes. So is there any contrary evidence in the record, or is that the fact that we must work with? Two things. Mr. Jane does claim that those records were provided to the FBI, and so he has presented a declaration opposing, in opposition. But he has no ---- my understanding of that declaration is he doesn't ---- he says some kind of records were presented to the FBI, but he ---- and he only knows that because he claims to have seen something, but he hasn't ---- what's the connection between whatever he says he saw and the locational records? Does he see any locational records that went to the FBI? Oh, yes. Yes, he did. He did aver that he actually saw those records in the possession of the FBI. Those records, records with locational information? Yes. Yes. Yes. And that is what he averred. What page of the record? I believe that's at page 137. I could be incorrect on that.  Just a second. Are these something different from what is said in the record that there was no information that came back? I'm sorry, Your Honor. I'm not sure I understand your question. Well, we seem to be talking about two different things. Number one, there's a certain time period in which your client was being sought, and the record indicates that there was no information that came from the provider to the FBI during that time period. No information was provided to the Anderson Police Department during that time period. Okay. Yes. And the information was provided later after the exigent request was withdrawn, but it was still provided to the agency. And they say they destroyed it. That may have been that they were a naughty person doing it. But I'd like to have you go back to Judge Graber's question. If it wasn't used to secure your client, then we're not in a criminal area of this case. There may be some other case you can bring. Well. Why is it relevant at all? Why are we? Why is it a problem? What's the harm that we need to rectify? The harm is Mr. Jane, if nothing else, throughout his complaint and the entire proceeding discussed in detail the harassment that was affected against him based on Ranney Abney's animus toward him and Ranney Abney's ability to enlist others to help him in that harassment. This search was part of that long series of harassment. And that in and of itself placed Mr. Jane in a great amount of fear. So, yes, it did have a negative and harmful effect on Mr. Jane. The only other thing that happened that we can say there's been a violation because some information came from the FBI during this period of time that would identify him. The search, the exigent, the submission of the exigent circumstance form with the cause of the producing of these records, yes. And whether they were produced during the six hours or afterwards makes no difference. They were produced as a result of the exigent circumstance form being used. It has nothing to do with actually determining that he was in a certain place at a certain time. And if I may, just so that I understand your question correctly, are you saying that it had nothing to do with the case? It's the same question that Judge Draper asked you. Does it mean that it has nothing to do with him being apprehended? Yes.  Your Honor, when you are, over a period of years, being harassed and threatened with incarceration and even physical violence, when that culminates in someone receiving records showing your whereabouts, your patterns of whereabouts. Well, let's go back to that for a moment, then. From what I can tell, the question is, is there a disputed issue of fact on that?   And Mr. Jayne's declaration, as I understand it, says, I am informed to believe that the Anderson police did not dispose of my cell phone records. FBI agent Mike Skeen of Reading had the same records. I actively viewed a written type paper by an agent who said he obtained some phone numbers from the case agent who was trying to locate me. Now, phone numbers is not what's at issue here, though. What's at issue here with regard to the search, as I understand it, because the phone numbers just wouldn't be a search under Supreme Court law. The interesting and hard question is, was the locational information a search? But he doesn't say he saw any of that. And he only is informed that they didn't dispose of the records. He has no personal knowledge. Well, direct evidence isn't necessary circumstantial evidence and only a disputed facts regarding the circumstantial evidence. But if one side says, I destroyed the records, and the other side basically says, I don't believe it, that's not a disputed issue of facts. I think if you look at the declaration of Regina Collier, that helps. She says, as far as I know, you know, this is what happened. She doesn't say that there were no other individuals who had access to the records before she did. She doesn't say whether there were. But they told the FBI, I mean, not the FBI, Sprint, that they didn't, that they no longer wanted the locational records at all, either the ones from the time period or retrospective ones. We don't want any locational information. Now, even hypothetically, suppose Sprint sent them an anyway, but they said we don't want them. And after they said we don't want them, Sprint sent them. Is that a search? Yes, because it was affected as a result of the exit circumstance form that they did submit. Even if they said we don't want it? Well, they withdrew it. Right. They did withdraw the request. But, Your Honor, it they would have never received those records if they hadn't filed them. There's no evidence that they used them to locate your client. So I don't understand what relevance this whole issue even has to what occurred here. No harm, no foul. Exactly. I think what's implicit in your question is, is that the only harm that Mr. Jane can complain of from these records is that he was apprehended because of them. Or there was some use made of them. Okay. Or even that somebody, I mean, I'm not, I would disagree probably that it matters whether they used her to find him. I mean, if they search your whole house and then, and turn everything upside down and don't even take anything and never use it for anything, you still have a Fourth Amendment problem. Exactly. But the problem here is that if somebody, if the police go to the door of your house intending to search it, but they find the door locked and they never go inside, is that a search? I think that the hypothetical is very different. For example, I think maybe the better hypothetical is the door is opened and even ajar, and then the police go in because the door is open and ajar, even if they didn't go in. But how did they go in? That's what I'm trying to understand. Exactly. My understanding is that they, before they got anything, they said we don't want  They withdrew the request.  Which, Your Honor, I have to say is a little different than saying they don't want it. They withdrew the request. Well, it's as if it never happened. It is exactly like going to the door and saying, you know, this is a really bad idea, let's not do it. Your Honor, I would respectfully disagree. If it had never happened, they would have never gotten those records. If the search, if the exigence of search. But we don't have any evidence that the records, even assuming that getting the records itself, even if they destroyed it, would be a search. And I think it might be. We have no evidence at all that those records were the locational information. As, again, Mr. Jane has abridged that he believes that he saw the records. I don't say that in the record. By the way, it's at page 141, not 130, whatever it was. And it's paragraph, well, he doesn't number it. It looks like it's part of paragraph 29. But what he saw was a written typed paper by a agent who said he obtained some phone numbers. Okay? So phone numbers are not locational records. That's what he saw. Yes. Yes. And, again, Your Honor, simply, again, I believe that it's, again, disputed material. But what's disputed? It's disputed the nature of what was received, obviously, by the ---- But he says it was phone numbers. That's his best case. Yes. And the phone numbers don't help you. Yes. Well, I ---- it raises the question of how they were obtained. It raises the question of what other information came with that. The ---- It may raise a question, but it doesn't make a record that you can raise a question. We're just trying to find something here to base your case on. Yes. Yes. And, again, Your Honor, I believe that it raises enough of a circumstantial evidence to put the facts in dispute. Mr. Jane is asking simply for a trial where a trier of fact can look at these facts and decide, you know, whether his claims are just or not. So, again, I think it's a little ---- I think the Court's ---- the Court is almost asking for direct evidence. And certainly the lower court essentially several times asked for direct evidence of certain issues. Well, there has to be some admissible evidence beyond the complaint in order to survive summary judgment. Certainly. Certainly. And Mr. Jane ---- And in many cases it's difficult for plaintiffs to obtain that evidence. Sure. Of course. But I guess if that's all he has is that paragraph, it doesn't, in my mind, really ---- And I also think the Court's focus on the one issue of whether he was apprehended because of the search fails to look at the larger harm that was done as a result of the APD's actions, including the search. When you have, over a period of more than five years, an agent who is repeatingly harassing you and at two different times has to be admonished by his superior not to have anything to do with him. But that person's already defended in the lawsuit. I'm sorry? That person's already defended in the lawsuit. No. He is no longer defended, but he enlisted others, repeatedly enlisted others in his case.  at the larger harm that was done as a result of the APD. And so this, as Mr. Jane has explained throughout this case, this was an extension of that harassment, and it is very frightening when someone goes as far as to ---- But then we're back to this. What's this? I'm sorry? But then we're back to this. And what's the ---- You said this was an extension of the harassment. What's the this? Oh, the search. The search and obtaining his whereabouts and an attempt to obtain his whereabouts. And the fact that the APD was able to do this by listing totally and completely false information in an exigent circumstance. But it didn't do it. That's the problem. It didn't do it. It never got any locational information. Well, it ---- And there's no evidence that it did. Well, it did. Well, I would say they did receive it. The APD did receive it. How do we know that? The APD says that it received it. They received a box with some information, but it doesn't say ---- there's no evidence at all that it was the locational information. It could have been other information. And they threw it out and they never looked at it, so nobody knows what they received. Well, the ---- well, Your Honor. And besides which, they said if it was locational information, they had told them not to send it to them. Well, Your Honor, it received information pursuant to the exigent circumstance request. That is clear and that is something that even APD agrees. The request was made for a ---- And so let's assume what they received was essentially, you know, pen tracking of telephone numbers, the usual old stuff that you used to get. Suppose they received that. I know that that's not a Fourth Amendment problem, so what's the problem? The problem is, is that, again, it is counterfactual to what was requested in the exigent circumstance request. It specifically starred and said, we want to know the location of this client ---- excuse me, of Mr. Jane. I do believe that is more than enough circumstantial evidence from which a jury could look at and say, well, if that's what they requested in their exigent circumstance form, and then they later received records from Sprint because of that exigent circumstance request, then there's someone to believe that those records received were location records. You have half a minute. Do you think really that that's evidence that can get you by a summary judgment? And if you did, it went to trial, that would be evidence enough to show some damages, something that occurred? Your Honor, I think that there are a host of damages that were suffered. I mean, frankly, my problem here is that this obviously is a really important question. That is, can you ask what are the Fourth Amendment rules that surround locational data, and there's different kinds of locational data, and how does the statute apply to it? In this case, I mean, it would all be decided completely in the air because we have absolutely no idea that there was any locational data. Well, we do know that it was requested, Your Honor. We know it was requested. That's all we know. I would like to reserve the balance of my time. You have minus 20 seconds. Thank you. Thank you. Mr. Wyatt. Thank you. Good morning. Jim Wyatt on behalf of the Respondents, and I will leave ample time. This is a civil rights case. Mr. Jane wants compensation for a violation of constitutional rights. And I agree. It is a very interesting and important question. The problem is this is not the case upon which to establish some type of law with respect to these cell phone records, in my opinion. And the tip-off is that I filed the motion for summary judgment. And by the way, you didn't argue this, as I understand. I mean, you didn't really argue that everybody's talking about a search. I kept trying to figure out what search you were all talking about. You never said, well, there wasn't one. No. What we said was that under Sampson, he's a parolee. Right. And so — And it's all fine, but you didn't say it, but nothing happened. There are declarations in which — I know there are declarations, but it wasn't your argument. I believe I did argue that in the lower — in the — I can't point to the record at this particular point, but I believe that the argument was that we did not arrest him, we did not violate his constitutional rights, but more importantly, the information that was submitted to the court in the motion for summary judgment was such that when the evidence in opposition was not credible. And that's reported in the findings and recommendations in a series of footnotes. So I do believe that that has been the argument. You've lost me now. This was — you're talking about a summary judgment? Yes. We filed a summary judgment motion, and we did it on the basis of not — we did it on the basis of declarations. Yes. But you indicated credibility findings were made? You used the term. Yes. In the findings and recommendations by the district court, Judge Hollows, he notes in footnotes that in certain instances that he finds that the information submitted by Mr. Jane is not credible. In other instances, he says it's not on point. But you understand that the judge is not in a position to make credibility findings in a summary judgment. We never allowed that. I believe the law is that he has to give every benefit of the doubt to Mr. Jane, even more so if he's a pro se litigant. But if Mr. Jane simply says something that's incredible, he does not have to accept it. That is, there's no material fact for the trial if the judge decides it's something incredible. Is that the position? No. What I'm saying is that each fact that we presented, which would entitle us to summary judgment, Mr. Jane had to oppose those facts. He did not have the benefit of anybody to assist him, but he was given the benefit of the doubt. He — if you — as you go through the record, you will see that there is a host of information that was submitted in opposition to the motion. It is a wild and crazy record because — Declarations? Well, there's a declaration. There's court transcripts from hearings I wasn't even present at. There's no cross-examination of any witness. It's a series of self-serving declarations opposed by Mr. Jane's self-serving declarations. Well, anything that is under oath and from personal knowledge has to be accepted as true for the purpose of deciding a summary judgment motion. I believe — And, of course, we have de novo reviews. So whatever the district court did, we're going to do it again anyway. So I'm not sure why it matters what — exactly what the thought process was at the district court. But the lower court addressed that issue that you just mentioned in its findings and recommendations. And if I can have a second, I will. That would be on page X of record, page 6. And it's page 4 of Judge Hollow's ruling. It's the middle paragraph. And I believe he's correct on the law there. Right. No, that's — And I think as you go through his decision, you will see in the footnotes, many times a fact is disputed, but it does not — it doesn't — there's something that the plaintiff claims he's disputing the fact, but the magistrate judge found that it really had no relation to the fact. Well, that's a different question. That means that it's not a dispute that's — or it's not a dispute that's material. So one of the things that I wanted to respond to that I think is significant about this case, and I simply started out to try and say that this record that comes to you is — it's very difficult. I think it was difficult for the magistrate judge to sort out. It was difficult. It was difficult for the magistrate judge to sort out. It was difficult for the magistrate judge to sort out.  It was difficult for the magistrate judge to sort out. So we would have benefited greatly by having Ms. St. Julian at the trial court level. But nonetheless, there is a repeated claim that there is some violation of the Stored Communications Act involved in this case. If you don't respond to it all in your brief, either. Excuse me. But your brief doesn't respond to it all, even though she starts out her brief with it. You don't even mention it. I believe it does, Your Honor. In — Well, anyway, respond to it now. All right. Thank you. 18 U.S.C. 2701, I believe, makes it a criminal offense to release this information or to try and obtain certain cell phone information in derogation of the two remaining — or the two following sections, 2702 and 2703. It's particularly interesting, and I didn't notice it — I didn't know any of this stuff when, of course, the Department is trying to find this. But they were presented with a form from Sprint Nextel, and they filled the form out. And we've admitted that originally they provided exigent circumstances that were incorrect. And the declaration of Sarah Bennett straightens that out. But 2702 allows the cell phone provider to provide information in various circumstances. And one of the circumstances is when there are circumstances in which there's danger to a person or — I forget the exact wording, but I can give it to the Court. Danger of death or serious physical injury to any person. Correct. But it simply allows the cell phone provider to provide the information. The following section, 2703, says the government can compel the disclosure of the information, either the actual conversations or in — I think it's subparagraph C, the location information, under certain circumstances, one of which is a warrant and one of which is a dangerous condition. But there's a major dispute in the case law about how this statute applies or doesn't apply to cell phone locational information. How the statute applies or doesn't apply to cell phone locational information. And there's also, in this case, because it's being brought as a 1983 case, there are significant issues about whether it could be a 1983 case, none of which you've briefed. What I'm trying to say, and I hope I understand what you're saying, is that it is not — if a cell phone provider gives the information in good faith, believing the representation of the law enforcement entity, it's not a violation of the Stored Communications Act. Well, it isn't by the provider, but what about of the government? If the government misrepresented the exigent circumstances, then that would be the focus of whether or not that's a separate — but that's not a violation of the Stored Communications Act. If you read those three sections, you can't find anywhere in there that the voluntary disclosure by Sprint next to the information. If I understand your argument, it is that if there's a violation by the government in making an improper request, it may be a violation of somebody's constitutional rights directly or of some other principle, but it isn't a violation of the Stored Communications Act. I can't find — Because it's the requesting. It's being untruthful at the requesting end that's the problem. It's not the disclosure. It creates liability for Sprint next, though, because they've released the records on a representation that you have an exigent circumstance. Right. That's the Stored Communications Act piece. But the improper request, if I understand you correctly, has to rest — the theory has to be somewhere else. It's with the Fourth Amendment, and then that's when Sampson comes in and basically says they could have — in other words, they could have gone and gotten these records pursuant to 2703. 2703 says go get a warrant if you want to compel the release of this information from the cell phone provider. They don't need a warrant because he's a parolee. The interesting part is it's clear under Sampson they could go into his house if they had a reasonable belief he was in the house. But this — the addition of a cell phone — Well, what do they need a warrant under 2703 depends — even though he's a parolee, it doesn't seem self-evident to me that even if there is a Fourth Amendment exception that there's a 2703 exception. I'm sorry, Your Honor. I did not track that. If 2703 requires that you get warrants before getting cell phone information and doesn't have an exception for parolees, the fact that there is an exception for parolees under the Fourth Amendment doesn't mean that there's a statutory exception for parolees. If there were one for parolees, and that's not — never been decided either with regard to cell phone information as opposed to other kinds of information. I'm certainly not an authority on the Stored Communications Act, but I trust Ms. St. Julian in the sense that she said she couldn't find a point, a case that basically addresses that very point you raised. So there's no case. That doesn't mean there's no answer. I go back to my beginning comments, which would be it would be wonderful to provide an answer to that. It's this factual scenario that would make it awfully difficult to do that in this case because of the way this record has been presented to you. It has come through not through evidence that's been tested by cross-examination, not by the usual process with two attorneys trying to create a clear record and specific facts. It's come to you in the form of declarations. And if you go into the — if you go into the excerpts of record, you'll see that even when you go to track, there are large gaps of court documents that are not part of the record. As an example, if you go into excerpt of record 144 to 195, there are — the pages are numbered by the district court. And it gets started. It stops at 8 of 52, jumps to 13 of 52, then on to 52 of 52. It goes down and addresses another document. It begins at 6 of 69, and then it goes to 18 of 69. There are huge gaps throughout this record. And that — all I'm saying is, is that arguing that the facts say this or the facts say that in this case, I think misses the point. The evidence that was put before the lower court was evaluated, and it was determined that there wasn't a triable issue of fact. But this is not a case of the violation of the Stored Communications Act. And I think once you apply the Sampson case to this, even if somebody had sent him back and said, go get a warrant for this cell phone information, they would say, we have an exception to it. At least they have a good-faith belief under Sampson that they have an exception. I believe there are no more questions. Thank you. Thank you, counsel. We appreciate the arguments of both counsel. And in particular, Ms. St. Julian, we appreciate your participation in the pro bono project. It's extremely helpful to the court to have the assistance of counsel.
judges: Wallace, Graber, Berzon